IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS J. WINKLE,

                Petitioner,         Case No. 3:03 CR 773

   -vs-

                                  MEMORANDUM OPINION

UNITED STATES OF AMERICA,

                Respondent.

KATZ, J.

Petitioner, Thomas J. Winkle, ("Winkle") has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The primary thrust of that motion is that his trial counsel was ineffective. After a thorough review of the motion and two memoranda filed by Petitioner and the response of the Government, the Court has determined that none of Petitioner's various claims of ineffective assistance of counsel have any validity and will deny his motion.

**BACKGROUND**

The parties have extensively briefed the issues in this case and the Court will not belabor them at length. The grand jury returned a two count indictment against Defendants Steven L. Myers and Petitioner on August 6, 2003. In count 1 Defendants were charged with conspiracy to commit bank fraud in violation of 18 U.S.C. § 371 that resulted from a check kiting scheme involving approximately $285 million dollars in checks over an 11 month period. In count 2 Defendants were charged with bank fraud in violation of 18 U.S.C. § 1344. Co-defendant Myers entered a plea of guilty on both counts. Defendant Winkle entered a plea of not guilty and a three day jury trial ensued before Senior United States District Court Judge John W. Potter. On May

14, 2004 the jury returned verdicts of guilty on both counts of the indictment. On September 16, 2004 this Judge sentenced Winkle to a term of imprisonment of 60 months on count 1 and 78 months on count 2, to run concurrently, followed by a term of 3 years of supervised release and restitution in the amount of $8,000,054,000.

A timely appeal was filed and the Sixth Circuit affirmed the conviction and sentence. *United States v. Winkle,* 477 F.3d 407 (6th Cir. 2007). The Court of Appeals declined to address Winkle's claim of ineffective assistance of counsel, holding that such claims are more properly raised in a post-conviction proceeding such as the one pending before this Court.

## Controlling Law

The Government's response (Doc. No. 129) extensively addresses the various issues of law involved in this case. Suffice to say that in a petition for collateral review pursuant to § 2255 which seeks to vacate a sentence, Petitioner has the burden of sustaining his contentions by a preponderance of the evidence. *McNeil v. United States,* 72 F. Supp. 2d 801, 803 (N.C. Ohio 1999). The benchmark for judging ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process . . . that it cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Petitioner must make two showings: first, there must be proof that counsel made serious errors, that his performance was deficient so that those errors were so serious that he was not functioning as counsel guaranteed to the defendant by the Sixth Amendment to the United States Constitution; second, Petitioner must show that the deficient performance prejudiced his defense. Both showings must be made to establish a breakdown in the adversarial process and that the result was unreliable.

In this Circuit to prevail on a petitioner pursuant to § 2255, Petitioner "must show a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 730 (6th Cir. 1990). To show prejudice Petitioner must demonstrate that there exists a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. *Strickland,* 466 U.S. at 694.

**Discussion**

As noted in the Government's response, "Defendant's motion is more than simply Monday morning quarter backing. Defendant seeks to reconstruct the events in a manner beneficial to him, regardless of whether those were the actual events." (Doc. No. 129, p. 5). The Government addresses each of the issues raised by Petitioner in nine separately numbered paragraphs beginning at page 5 of its Response. The Court will briefly address the same.

**1. Summary charts were admissible**

Winkle contends that his trial counsel should have objected to summary charts introduced by the Government or have requested a limiting instruction. Clearly, summary charts are readily admissible pursuant to Fed. R. Evid. 1006, and the lack of a limiting instruction as outlined in Pattern Jury Instruction 7.12A would have had no bearing on the outcome of this case.

**2. Defendant Erroneously Characterizes Christopher Boyd as a Non-expert**

Winkle contends that defense counsel should have requested a limiting instruction as to this testimony. The Court of Appeals addressed this issue at length in its opinion affirming his conviction and found that Christopher Boyd was qualified as an expert and that his conclusion that a check kite had occurred did not invade the province of the jury. *Winkle,* 477 F.3d at 415-417.

3

The absence of the trial court reciting the Pattern Jury Instruction 7.03 had no impact on the outcome of this trial. In fact, Winkle confirmed Boyd's opinion that the defendants were jointly engaged in check kiting when he conceded the underlying facts to a kite, which was done on cross examination of Winkle. (Winkle Tr. 527, 529).

### 3. Defense Counsel Correctly Chose not to Call Certain Witnesses

Petitioner contends that his trial counsel was ineffective for failing to call certain witnesses, most prominently former Oakwood Deposit Bank Company CEO Steven Miller and co-defendant Steven Myers. Both of those defendants had previously been convicted and, as noted by the Government at page 7 of its memorandum in response, "destroyed whatever semblance of credibility a jury might have given to Winkle's testimony that he did not intend to defraud the bank." (Doc. No. 129, p.7). Miller had been convicted for his own embezzlement scheme, unrelated to Winkle's check kite. But it was the check kiting scheme that led to the discovery of that embezzlement. This Judge handled both the Miller and Myers cases. Miller has never said anything to support Winkle's contention that Miller approved the check kite. This issue too was addressed by the Court of Appeals and determined adverse to Winkle.

As to all of the witnesses which Petitioner asserts defense counsel, Richard Kerger, should have placed on the witness stand, the Court agrees that if Mr. Kerger called those witnesses "one would expect that Winkle's § 2255 motion would allege ineffective assistance of counsel for having those individuals testify. For defense counsel to have put on those witnesses would have been foolhardy at best and malpractice at worst." (Doc. No. 129, pp. 8-9).

### 4. Defendant Contends he was not Advised of a Plea Agreement Offer and the Consequences of a Trial

The Government, beginning at page 9 of its response, outlines clearly the facts of this issue. Winkle's affidavit attached to his memorandum in support of his petition clearly contains argument on this issue made up out of whole cloth and totally at odds with the facts. The affidavit of Richard M. Kerger attached to the Government's opposition clearly outlines the facts of this issue. Mr. Kerger is a leading member of the criminal defense bar and respected as such by both the Government and the judges. It is nonsensical to believe that not only Mr. Kerger but the Government would fail to participate in discussions concerning a proposed plea agreement and, on multiple occasions, the results of failure to enter into such a plea agreement and the impact of the United States Sentencing Guidelines on a finding of guilty. The Court gives no credence to Petitioner's argument that he never discussed with his defense counsel resolving his case by a plea of guilty and that he was unaware of any guideline calculations and possible sentence pursuant thereto.

### 5. Limiting Instruction for Co-conspirator Testimony

Winkle contends that his trial counsel was deficient by failing to request a limiting instruction for his co-conspirator's statements which were admitted under Fed. R. Evid. 801(d)2)(E). The Sixth Circuit Pattern Jury Instructions recommends no such instruction be given.

### 6. Contention that Defense Counsel Failed to Engage in Discovery

This contention clearly is outside the arena of believability. This was an open file discovery case and correspondence from the Government clearly states that defense counsel took advantage of that process. Mr. Kerger in his affidavit relates that he began representing Winkle on December 12, 2001, three weeks after the check kite scheme collapsed, and continued to

represent him through his sentencing hearing. That representation was in both the criminal and extensive civil matters arising from the check kite. The Court gives credence to Mr. Kerger's affidavit at ¶¶ 1, 3, 5, 9 and 10, summarizing the extensive discovery engaged in by him and his discussions of the same with his client, Winkle.

### 7. The Court Correctly Denied Admission of the FDIC Report

Winkle contends that his counsel failed to get the FDIC report admitted. His assertion is correct, but it was not for Mr. Kerger's lack of trying. After Government objections on numerous grounds, the Court refused to admit the report. In fact, lack of admission was affirmed by the Court of Appeals. The affirmance was based upon the reasoning that "even if the report was relevant, its slight probative value was substantially outweighed by the danger that its admission would confuse the jury." *Winkle*, 477 F.3d at 418.

Winkle also contends that his trial attorney should have introduced into evidence a supposed $8 million bridge loan note. As the Government points out, that would have been an acknowledgment by Defendant of the loss created by the check kite and no attorney would risk the prejudice that would create in front of the jury. The Government appropriately addresses this at pp. 12-13 of its memorandum.

### 8. Sharla Shaffer's Testimony was in fact Admissible

Shaffer testified that, absent the depositing of checks from Steve Myers Auto Sales, Winkle Chevrolet did not have enough money to cover expenses. Her duties included familiarity with the dealership's accounts receivable, doing the financial paperwork and recording car sales, and her testimony was consistent with Petitioner's testimony on cross examination where "Winkle himself admitted that the checks he wrote would not have been honored had he not been receiving

6

checks from SMAS." *Winkle,* 477 F.3d at 414. And the GM Zone Manager testified at trial that Winkle Chevrolet was on a cash basis, requiring it to have certified funds for purchasing cars, a rare occurrence. (Stark Tr. 297). Winkle's contention that Shaffer's testimony was inadmissible lacks any merit.

Finally, Winkle challenges his sentence of 78 months as unreasonable. Since that issue was not raised on direct appeal he cannot challenge its reasonableness in this proceeding. *Grant v. United States,* 72 F.3d 503 (6th Cir. 1996).

**CONCLUSION**

Winkle has failed in all respects to sustain his burden of proof that his trial counsel's performance was deficient and/or that he was prejudiced by that performance. As previously noted, he must prove both to prevail on his § 2255 motion. For the foregoing reasons, and those extensively addressed in the Government's response to the motion, Petitioner's motion to vacate sentence is denied.

The court certifies, pursuant to 28 USC 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis on which to issue a certificate of appealability. 28 USC 2253; Fed.R.App.P. 22(b).

IT IS SO ORDERED.

   s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE